is agenda number 24, Frederick J. Hossfeld v. Illinois State Board of Elections. Thank you, Mr. Chief Justice, your honors. Good morning. Michael Casper on behalf of the petitioner. May it please the court, counsel. This is an election case about the meaning of the phrase qualified primary voter for purposes of being a political party candidate in a primary election. This issue has been decided by two different appellate courts in the last few years. The first case to decide this was from the second district in the case of Cullerton v. DuPage County Officers Electoral Board in 2008. The second case was from earlier this year in the decision below in this case from the first district. For a long time, Illinois had a restriction on switching political parties of two years. And that applied to three different categories. It applied to voters, it applied to people who signed nominating petitions, and it applied to candidates. So if you voted in a party's primary election, you were precluded from doing one of those three things for the next two years. In 1973, the U.S. Supreme Court, in the case of Casper v. Ponticus, invalidated that provision, the Few years after that, in 1976, in Sperling v. County Officers Electoral Board, this court invalidated that provision, the two-year party switching restriction, as it applied to people who signed nominating petitions. What the court went on to do in Sperling was to say that because the system was intertwined, it appeared in this, in fact, in the same sentence in the statute, the court held that although the provision regarding party switching by general, on its own, because it's intertwined with petition signers, it held that was also unenforceable. The next thing that happened in Sperling, this court invited some legislative action. The next thing that happened a few years later, in 1990, the Illinois General Assembly amended the statute. Now, regarding party switching by candidates and party affiliation by candidates, the statute contains two references. At the beginning of the section, this is section 8-8, and it also appears in section 7-10, but for our purposes, 8-8, it refers to a qualified primary voter in the section that requires a candidate to fill out a statement of candidacy, in which they swear that they are a qualified primary voter of the party whose nomination they seek. Later on in the same section is the sentence that contained the preclusion, the two-year preclusion, regarding petition signers and candidates, the eligibility statement that included the two-year provision. The legislature in Public Act 86-1348 deleted the second sentence from the section, but they left intact the provision regarding qualified primary voters in the statement of candidacy section. So that's where the status was after the 1990 amendment to the election code, until the Cullerton case in 2008. What happened in the Cullerton case is that a candidate, Mr. Cullerton, voted in the Republican primary in 2008. After the primary election, the Democrats appointed him to fill a vacancy in nomination. A vacancy in nomination occurs in three circumstances, when no candidate runs in a primary election for legislative and executive offices, if the candidate who wins the primary dies or resigns. But here, unlike Cullerton, right, there was a general election in between the two primaries. Correct. What happened after Cullerton voted in the primary election, this was a consolidated primary election. I'm sorry, this was, the primary election in Cullerton was not preceded by another general election. That's right. That's a factual distinction between here. And that's, in fact, what Mr. Odelson is going to argue is the dispositive distinction in the case. And we think that's wrong. We think that the Cullerton decision is the proper interpretation of the statute and that the decision below is an improper one for two reasons. The first reason is that the legislature has never endorsed the restriction that the court below applied. The legislature has acted twice in this regard. The first thing the legislature did was it imposed the two-year party switching requirement before Sperling. So the first thing they did was there was a two-year party switching restriction. The next thing that the legislature did in 1990 after Sperling was it deleted a sentence from the section. It didn't add anything. It didn't add any new language. It simply deleted one reference to party switching by petition signers, the only reference, and it deleted one reference of two to party switching for candidates. So the Cullerton court said that the legislature, when it enacted this act, will, quote, left intact, close quote, the restriction for candidates. So the reason that the Cullerton court was right when they, when it said that is because the legislature only deleted language. It didn't add anything new. It didn't shorten the period. It said that it left, the legislature left the party switching. So that's the iteration that it was before the enactment, which was the two-year restriction. So in the court below, the court adopted this restriction. What Rauschenberger did in this case is he voted in 2009 in a consolidated primary election. Then he voted in a consolidated general election in April of 2008, or 2009, I'm sorry. And then in October of 2009, he signed a statement of candidacy in which he swore he was a qualified primary voter of the Republican Party, despite the fact that when he voted in the 2009 primary, he voted in the Democratic primary. So what the court below did is it attempted to distinguish Cullerton based on that factual distinction, that there was an intervening general election. So what the court's interpretation below and what Mr. Oleson's argument is, is that that party switching restriction is limited to the instance of the general election and the primary election that immediately precedes it, what he calls an election cycle. The court below refers to an election cycle, that it's a primary, the ensuing general, and nothing else. I think that that's the improper interpretation of the statute for the reasons I just said about the legislative action. The legislature has never passed a bill that says that. And they, could they do that? Sure, certainly they could. But they haven't. They've only enacted the two-year restriction, and then they deleted one sentence. And so it's either one or the other. Either it exists in its prior form, or it doesn't exist at all. But I don't think there's any support that the legislature shortened the period. Court, counsel, if this court does not afford you relief before November 2nd, is this moot? Well, I think for purposes of this election and this candidate, it may very well be. I think that if the legislature did not allow that the, and Mr. Rauschenberg were to prevail in the election, then he could be subject to a qualifications challenge in the Senate, I suppose, if he's elected to the Senate. But I also think that this is a question that needs to be resolved. So I think the public interest exemption, as I set forth in my brief, applies to this. I think that this question needs to be resolved one way or the other. When, when are you eligible to be a candidate based on your prior voting behavior? So you're not asking this court to remove him from the general election? Oh, yes, we are, Your Honor. We would like a ruling that he is ineligible, that he should have been ruled ineligible, reversing the decision below and the decision of the Electoral Board, which would render him ineligible, which would create what the statute refers to as a vacancy in nomination, which could be filled by the local political party officials. Mr. Kasper, aren't you asking us to read time restrictions back into the code? Weren't they all deleted? Well, if that's the case, if all the time restrictions were deleted, then the Cullerton decision was improperly decided. Then, then, then the result of that is poor Mr. Cullerton was improperly removed from the ballot. Because if there are no time restrictions, then he should, then the result in the Cullerton case should have been reversed. And then, and that at least I understand. I can understand the argument that Cullerton was wrong when they said the legislation left intact the party switching restriction as it applied to candidates. But what I don't understand is how any reasonable interpretation could be that the legislature changed it. And the difficulty with, with that ruling that Cullerton was simply incorrect is that you're left with what is the meaning of the phrase qualified primary voter for purposes of the statement of candidacy. We think that The impact on Kasper on your argument? I'm sorry? Kasper? Kasper is, I don't think Kasper applies. It applies in that it had, it had to do with the two-year restriction, but Kasper dealt with voters, not with candidates. And in fact in this case, in regarding candidates, the federal So the same constitutional rights wouldn't apply to the candidates as the voters in Kasper? That's correct. I think that this court in Sperling specifically said that restrictions on candidates, quote, may and should be more restrictive, close quote, on candidates than voters generally. And in fact, this court in the Sperling decision said, quote, that the restriction on candidates, meaning the two years, could be upheld against constitutional challenge is, however, of little help here. Such restrictions and establishments of periods of time involved are within constitutional limits, matters for legislative determination, close quote. So the court has specifically, this court has specifically hinted that the two-year restriction is constitutional. The federal district court in Chicago in Benninger versus Ogilvie pre-Sperling in 1971 specifically ruled that the two-year restriction on candidates is constitutional. Other states have had longer party switching restrictions. I only cited one of them in my brief story versus Brown involving California, which involved a longer party switching restriction than, than this one. But in this, in this case, Rauschenberger voted in the Republican 2008 primary. Was he eligible, eligible, eligible, excuse me, to vote in the Democrat 2009 primary? Yes, and the reason- Was he eligible to vote in the Republican 2010 primary? Yes, because- So voting has no, there's no restriction on voting, you're saying only on candidates. Correct. That, that's right. CUSPR did invalidate all restrictions, time restrictions, regarding, regarding voters. Now, Illinois in the legislature has never reenacted any. There, there have been cases that have upheld restrictions on voters. You have to be registered 30 days before the election, that kind of thing. But we do not have any of those. So the other reason why- You don't think, you don't think Cullerton stands for the proposition that you can't run in one party's primary and then be on the ballot in the same election cycle on the other party's general election ballot? You don't think it's that limited? No, I don't think it's limited to that, to that universe. I think it's broader than that. That's what happened, of course. Correct. That, that's right. And the reason why that should, that is not the rule is because that rule doesn't make any sense. Everyone who runs in a primary election has to sign a statement of candidacy in which they attest that they're a qualified primary voter. Under that rule, and, and if you buy into this notion of the cycle, a cycle is two years. Under that interpretation, the word qualified primary voter really only has any teeth for about one-third of the entire cycle. It only applies after the primary and before the general. Well, we don't nominate our candidates in that period by and large. Both parties, the Democrats and the Republicans, we nominate our candidates at the primary. And of course you have to sign that paper well in advance of the primary. So under that interpretation, that it only gets teeth at the primary and loses its teeth, I suppose, at the general or some other time, as I point out in my brief, it only applies to a handful of candidates. Well, why would everybody have to sign a statement of candidacy that only applies to a handful of people? And the other reason is that it means that the meaning of the phrase has to change at some point during the cycle. If Rauschenberg could sign that statement of candidacy before the primary and he signed exactly the same piece of paper after the primary, then it would have two different meanings. I think that if the legislature intended the statutory term qualified primary voters to change during the course of the cycle, it would not only, number one, have said from when it changes, which it apparently didn't, and to what it changed from to what it changed to. And none of that is set forth in the statute. So you're left with this provision where the phrase means one thing before the primary, one thing after the primary, before the general, and then it means something else, again, going back to its original phrase, which really is no meaning at all after the general election. So the phrase has to change meanings in order to adopt the decision below. And so there's really been three enactments here. One, by the legislature to impose the two-year rule in the first place before Sperling. Second, to delete one reference to candidate party switching. And then the third was the decision below, which shortened it. The legislature never shortened the period, but that's what the decision below means. It means that the period was short. I think the Cullerton decision got it right. Either it was left in or it was deleted. But it can't have been shortened. But isn't it problematic and logistically problematic to look at the local elections or the consolidated elections to determine a candidate's qualification for regular or state or federal elections? Well, I think, I don't understand why that would be problematic. I don't think it's the nature of the election that determines. It's the time frame. The rule is simpler and more easy to understand for voters and for candidates and for political parties if the rule is based on time, not based upon activity. So some elections are partisan and some elections are not. Mr. Rauschenberger just happens to live in an area where they have partisan township elections in odd-numbered years. Are you saying here that it's the 2009, only the 2009 primary that made him not a qualified elector and a Republican? But if he had voted in a 2008 Democratic primary, could he run as a Republican in 2010? Under your argument? Yes. Yes. Because there was another primary election in which he voted as a Democrat in 2009 in which he could re-affiliate. Just take the situation. A person runs votes as a Democrat or a Republican in 2008 and then wants to run as a Democrat in 2010. Can he do that? Not unless there is an intervening primary election in which he can re-affiliate. What if you have a representative who is elected as a Republican in 2008. He switches party allegiance in 2009. Can he run as a Democrat in 2010? I think that's a more difficult question, but I think the answer to that has got to be no. Under Illinois law the way it is, I think that's got to be the law. Some states have different rules. And the legislature could enact a different rule, but to date they haven't. So I think we're left with this proposition that it's either the pre-Sperling rule or it's no rule, but the rule limiting it to a cycle I think is not the rule. Now Mr. Orlison in his brief, he talks a little bit about how if the interpretation of Cullerton is correct, that the pre-Sperling rule is the rule, that that somehow is in constitutional infringement upon the rights of candidates and political parties. In effect his argument is, the gist of his argument is that that period is too long. As I said before, I think that that argument should be rejected based on what this court has previously said in Sperling, based on the federal district court in Bendinger, which specifically upheld the two year restriction, and finally because of the longer statutory provisions that have been upheld in other states. In addition, he claims that it's somehow the rights of affiliation, the rights of association of political parties would be impacted by this. The right of say Republicans to pick their candidate, they should be able to choose whomever they want, and that any restriction at all is a constitutional infringement on that. Well that would have applied legal force to the Democrats when we tried to appoint Cullerton in 2008, and that was invalidated and Mr. Orlison as he was removing Mr. Cullerton didn't seem to have an objection to that. But more importantly in all of those cases which involve the rights of parties to associate there's a conflict between the state statute and the party rules regarding participation. The case that Mr. Orlison cites is Tichigin out of Connecticut where the Republicans had a rule, party rule saying anybody could vote if you were a registered Republican or an Independent that conflicted with the state statute. The U.S. Supreme Court ruled with the party and enabled them to open their primary. In this case there's no evidence in this record that the Republicans Mr. Orlison's position in the Cullerton case though is not in violation of his position of this cycle right? Because Cullerton did have that factual distinction. That's correct. That's correct. The factual distinction in this case is that there was the nature of the consolidated election so there was a consolidated primary followed by a consolidated general and then the statement of candidacy. Whereas in Cullerton there was no intervening consolidated election. That's correct. And in this case just to follow up I thought that there is no evidence that there's a conflict between the party rules and the state statute regarding candidate eligibility. In this case the candidate, Mr. Rauschenberger voted within the window of the prohibition on party switching that was in fact in the statute prior to Sperling and that the Cullerton court ruled remained in place after the amendment by the legislature. Because he voted as a Democrat within that window the door to his Republican candidacy was closed. For that reason he should have been ruled ineligible and his name should not have been allowed to appear on the ballot. For that reason we ask that the decision of the appellate court and the electoral board be reversed. If there's no further questions I have nothing further. Thank you counsel. Thank you. Good morning Your Honors. May it please the court. The integrity of the electoral process You better state your name for the record. I'm sorry. Burton S. Olson for the respondent Steven Rauschenberger. I'm sorry Your Honor. The integrity of the electoral process and preventing party rating are the two elements necessary for the legislature to pass a law which locks out a candidate or a voter or a signer from participating in elections. That's what the United States Supreme Court said in Casper. Which is a 1973 United States Supreme Court case. Of course the Benninger case which Mr. Casper referred to was a 1971 United States District Court case upholding the 1971 7-43 statute which prohibited voters, signers and candidates from partaking in the political party primary process within a 23 month period after you have already voted in one primary. You were locked out. The Casper case really is the essence of what we're dealing with here because from that Casper case this court in Sperling and this court in Dooley held that the voter, the signer and the candidate's rights are so intertwined that once the United States Supreme Court took out that 7-43D provision locking a voter out for a 23 month period, everything fell. Now when everything fell, we all know what needs to happen. The General Assembly has to act to implement a law if it feels the need and the necessity to prevent party rating and to preserve the integrity of the electoral process by not allowing crossovers in voting. Party rating, what is that all about? What did that mean back in 1971? Of course the courts talk about one political party sending all their troops over to vote in the other political party's primary to dilute, to run a soft candidate to dilute that partisan primary candidate so that their real party will have an easy time in the general election. Colorton was just that. A registered Republican who had voted Republican for years and who voted Republican in the February 2008 primary was recruited 58 days after the primary because the Democrat party failed to run anyone in the 23rd legislative district race. So they had a vacancy they had to fill. Well, who should we get? We'll get the guy who just voted in the opposite political party who just said when he registered, when he came in and declared himself, which is the only remaining qualification in 7-43 that you must declare your party affiliation when Mr. Cullerton declared that he was a Republican he in fact was locked in in that primary to take a Republican ballot and vote Republican. Then when he got to the general election, as you know, you can vote any way you want everybody's on the ballot. However, what the Democratic party did was take the Republican and 58 days later try to make him into a Democrat where he swore he was a qualified Democratic voter of the Democratic party. The Cullerton case is correct. Justice O'Malley went a little far afield when he stated that you couldn't change parties from the 2008 primary to the 2010 primary because he didn't take into consideration the 2009 intervening consolidated primary. Where Mr. Rauschenberger, who for years voted Republican, for years was a state senator in this state a Republican state senator, voted in the Elgin Township Democratic primary for his sister who was running as a Democrat. He voted in February of 2009 in the primary declaring himself to be a Democrat he voted in the April consolidated election in Elgin Township and that ended that election cycle. And I didn't make up those words myself that's from the Moore case, the Moore case in the federal court that talked about the election cycle, the election season. Mr. Rauschenberger in October of 2010 in 2009 then executes a statement of candidacy stating that he now is declaring himself for the February 2010 election as a Republican to run in the Republican primary. I would submit, your honors, there is no law, there is no statute, there is no legislation which prohibits anyone from doing exactly what Steve Rauschenberger did. After one primary and general election was done, he exercised his freedom of association, his freedom of speech, executed a statement of candidacy and sought to run in the Republican primary which he did and which he won. 7-43, only thing left is that a voter must declare his party affiliation. That's all. 8-8 which is the section of the code applying to state senators and state representatives specifies that a primary voter may not sign petitions or be a candidate of more than one political party. Mr. Rauschenberger certainly didn't seek to do that. He ended his political cycle of being a Democrat, exercising his rights in the consolidated primary of 09. He then began the next cycle by exercising his rights to run as a Republican in February of 2010. Our cases are very well thought out and very clear stemming from the Cusper case to the Sperling case to the Clinton case to this case. Candidates, petition signers and voters in Illinois know that now in Illinois until the General Assembly acts can switch parties from primary to primary. Not within the same primary, still a restriction on that, but from primary to primary. Can there be a restriction? Yes, I agree with Mr. Casper. There can be a restriction. New York has a restriction, but in New York you can register 30 days prior to the general election and declare what your affiliation is for the next primary. We can have the same provision as the United States Supreme Court held in Rosario. However, we don't. We have what we have and that is laws restricting you from affiliating with both political parties in the same election, which is what Mr. Cullerton tried to do. And laws that we don't have that allow Mr. Rauschenberger to freely associate and be a Democrat in the consolidated primary and be a Republican, a truthful, qualified Republican because that's what he declared in the February 2010 primary. I think the I believe that the appellate court in the second district got it right in Cullerton and I believe our first district got it right in the case below. Did anything specifically do away with the two years requirement that he would have us impose, Mr. Casper? Yeah, the Cusper case did and that was again carried on by And his position that that applied more to voters, not to candidates? He's correct. It did apply to voters. But using that restriction, this court in Sperling said that you cannot have petition signers and candidates held to the standard that the Supreme Court of the United States said is not a constitutional standard. So this court in Sperling extended the Cusper holding to now cross over from primary to primary and to candidates as you did in Dooley. Again, in your language in Dooley, in the last paragraph is extremely strong and applies herein. And I have nothing further. If there's any questions? Thank you, Counselor. Thank you. Thank you, Your Honor. Very briefly, Mr. Odelson paints a picture of, I think, what he thinks the law ought to be. And maybe he's right. But that's not what the law is. That decision is up to the legislature. The legislature can decide how long the restriction on party switching can be. As long as it's within constitutional bounds. The legislature has never shortened that period to be limited to a cycle so that it only applies in that period between a primary and the ensuing general election. They could do that, but they have not done so. And as I said, maybe that ought to be the rule, but it's not. The legislature has only done two things. They imposed the two-year requirement and then they deleted one reference to the two-year requirement but left in the provision regarding a qualified primary voter. So it's either one or the other until the legislature imposes a different rule. So I think the decision for this Court is either the Cullerton case got it right or the Cullerton case got it wrong. But shortening the period I don't think has any support from the legislative activity at all. I don't think that Public Act 86-1348 can possibly be read to shorten that party switching period. And maybe that's the way the legislature ought to do it, but they haven't done it yet. And because of that, Mr. Rauschenberger fell into that window in which party switching was prohibited and therefore his candidacy should have been ruled ineligible. I have nothing further unless there are some questions. Thank you. Thank you. Case number 109725 is taken under advisement as agenda number 24.  During which we will make a decision on this case and return that decision as soon as possible. So if anybody's interested I'd wait here. In this case the Court has examined the briefs, listened carefully to the arguments this morning, and feel that expediting this matter is consistent with justice. And we would note that we will affirm the decision of the Appellate Court herein and an opinion will follow.